530 S.E.2d 374

**The CITY OF HARDEEVILLE, South Carolina, and The Town of Ridgeland, South Carolina, Petitioners,**

v.

**JASPER COUNTY, South Carolina, Respondent.**

**No. 25104.**

Supreme Court of South Carolina.

Heard Feb. 16, 2000.

Decided April 3, 2000.

Curtis L. Coltrane, of Coltrane and Alford, of Hilton Head Island, for petitioners.

David S. Mathews, of Ridgeland, for respondent.

BURNETT, Justice:

This case concerns the Local Accommodations Tax Act, S.C.Code Ann. §§ 6–1–500 to –570 (Supp.1999) (Accommodations Tax Act), and the Local Hospitality Tax Act, S.C.Code

Ann. §§ 6-1-700 to -770 (Supp.1999) (Hospitality Tax Act). The Court granted Petitioners The City of Hardeeville (Hardeeville) and The Town of Ridgeland's (Ridgeland's) petition to hear this matter in its original jurisdiction. Rule 229, SCACR.

## FACTS

Effective October 1, 1996, Hardeeville adopted an ordinance imposing a two percent accommodations tax. Effective August 20, 1998, Hardeeville adopted an ordinance imposing a two percent hospitality tax.

On May 3, 1999, Hardeeville amended the accommodations tax ordinance, raising the tax to three percent.

Effective October 1, 1997, Ridgeland adopted an ordinance imposing a three percent accommodations tax and a two percent hospitality tax.

On September 21, 1998, Jasper adopted Ordinance 98-10 imposing a three percent accommodations tax and two percent hospitality tax throughout the unincorporated areas of the county. The ordinance further provided a one percent accommodations tax and hospitality tax within municipalities, except if a municipality within the county had already imposed an accommodations or hospitality tax, the county tax would be in an amount to bring the cumulative accommodations tax to three percent and the hospitality tax to two percent.

Effective June 28, 1999, Jasper adopted Ordinance No. 99-12 imposing a three percent accommodations tax on the unincorporated areas of the county and in any municipality which did not have a local accommodations tax. Where a municipality had already imposed or subsequently enacted an ordinance imposing an accommodations tax, the county ordinance imposed the greater of one and one-half percent or an amount to bring the cumulative county and municipal tax to three percent.

Effective June 29, 1999, Jasper adopted Ordinance 99-11 imposing a two percent hospitality tax in the unincorporated areas of the county and in municipalities which did not have a hospitality tax. Where a municipality had already imposed or subsequently enacted an ordinance imposing a hospitality tax,

the county ordinance imposed the greater of one percent or an amount to bring the cumulative county and municipal tax to two percent.

Neither Hardeeville nor Ridgeland passed a resolution consenting to Jasper's accommodations or hospitality tax.

## ISSUE

Do the Accommodations Tax Act and Hospitality Tax Act [1] permit a county to divest a municipality of a portion of its tax rate when the municipality has previously imposed the full accommodations and/or hospitality tax authorized by the statutes?

## DISCUSSION

Hardeeville and Ridgeland contend the plain language of the statutes, particularly the first sentence of § 6-1-520(A) and § 6-1-720(A), permits a municipality to impose the maximum accommodations and hospitality tax rates if it passes its tax ordinance before the county passes a corresponding tax ordinance. The two municipalities maintain, if a city does not impose the maximum taxes and the county imposes accommodations or hospitality taxes, the statutes reserve to municipalities a minimum one and one-half percent accommodations and one percent hospitality tax.

Jasper contends if the General Assembly had intended municipalities to impose the full tax to the exclusion of counties solely by passing a tax ordinance first, it would have expressly stated so. Further, based on the language in the statutes requiring municipal consent if a county imposes in excess of half the maximum cumulative tax, Jasper asserts the statutes reserve to counties the right to impose half of the cumulative maximum tax within a municipality, even if the municipality has previously passed an ordinance imposing accommodations and/or hospitality taxes. We disagree with Jasper.

---

1. At times, the Accommodations Tax Act and Hospitality Tax Act are referred to as "the statutes."

■ Effective July 1, 1997, the General Assembly passed the Accommodations Tax Act and Hospitality Tax Act. Revenues generated by the accommodations and hospitality taxes are to fund tourism-related projects. § 6–1–530; § 6–1–730. The relevant portions of these statutes appear below.

Section 6–1–520(A) and § 6–1–720(A):

A local governing body [2] may impose, by ordinance, a local accommodations [hospitality] [3] tax, not to exceed three [two] percent. . . . The governing body of a county may not impose a local accommodations [hospitality] tax in excess of one and one-half [one] percent within the boundaries of a municipality without the consent, by resolution, of the appropriate municipal governing body.

Section 6–1–540 and § 6–1–740:

The cumulative rate of county and municipal local accommodations [hospitality] taxes for any portion of the county may not exceed three [two] percent, . . . .

■ "If a statute's language is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the court has no right to look for or impose another meaning." *Paschal v. State Election Comm'n*, 317 S.C. 434, 436, 454 S.E.2d 890, 892 (1995). This Court cannot construe a statute without regard to its plain and ordinary meaning and may not resort to subtle or forced construction in an attempt to limit or expand a statute's scope. *Berkebile v. Outen*, 311 S.C. 50, 426 S.E.2d 760 (1993).

■ The language of the statutes is clear and unambiguous. The statutes authorize counties and municipalities to implement local accommodations and hospitality taxes within their jurisdictions. They establish a maximum tax for municipalities and counties, subject to a maximum cumulative tax which may be imposed within incorporated areas. The statutes, however, specifically preclude a county from imposing more than half of the maximum cumulative tax in an incorpo-

**2.** "Local governing body" is defined as the governing body of a county or municipality. § 6–1–510(2) and § 6–1–710(1).

**3.** The language within the parenthetical is from the Hospitality Tax Act.

rated area unless it obtains the municipality's consent. The converse is not required: a municipality need not obtain the consent of the county to impose more than half of the maximum cumulative tax. This limitation òn counties effectively reserves half of the maximum cumulative tax (or the option to impose this amount) to municipalities. Since a municipality is only limited by the maximum cumulative tax amount, it may impose any amount up to and including the maximum cumulative tax if the county has not imposed the tax. If a municipality has imposed the maximum tax, the statutes effectively preclude a county from imposing any tax within that incorporated area.[4]

■ Jasper asserts interpreting the statutes in the manner urged by Hardeeville and Ridgeland results in the unlawful delegation of the taxing authority to municipalities in violation of art. X, § 5 of the South Carolina Constitution. Jasper explains by allowing municipalities to decide the amount of tax within the municipality, municipalities effectively determine the tax which can be levied in the county while county residents living outside the municipality have no voice in the matter.

Art. X, § 5 of the South Carolina Constitution provides: "No tax, subsidy or charge shall be established, fixed, laid or levied, under any pretext whatsoever, without the consent of the people or their representatives lawfully assembled." "[T]he power to fix and levy a tax should only be conferred upon a body which stands as the direct representative of the people, to the end that an abuse of power may be directly corrected by those who must carry the burden of the tax." *Crow v. McAlpine*, 277 S.C. 240, 245–46, 285 S.E.2d 355, 358 (1981).

Municipalities effectively do determine the amount of tax a county can impose *within the municipality*.[5] Municipal vot-

---

4. At oral argument, Jasper maintained for the first time § 6–1–760 (Supp.1999) supports its position the General Assembly reserved half of the maximum cumulative accommodations tax to counties. We disagree. Section 6–1–760 is a "grandfather clause" authorizing the continuation of certain accommodations tax ordinances enacted before March 15, 1997.

5. It is undisputed a county can levy any amount of tax up to and including the maximum rate within its unincorporated areas.

46

ers elect both city and county officials. Accordingly, the municipality's tax rate and county's tax rate within the municipality are levied by representatives elected by the voters upon whom the taxes are imposed. Residents in unincorporated areas elect county officials who then choose to implement any remaining portion of the maximum cumulative tax in the unincorporated areas of the county. There is no taxation without representation.

## CONCLUSION

We conclude Jasper's Ordinance Nos. 99–11 and 99–12 are unenforceable within Ridgeland's municipal limits because Ridgeland had adopted a three percent accommodations and a two percent hospitality tax ordinance prior to adoption of the county's ordinances. Jasper's Ordinance No. 99–11 is unenforceable within Hardeeville because the municipality adopted a two percent hospitality tax ordinance prior to adoption of the county's ordinance. Since Hardeeville adopted an ordinance imposing a two percent accommodations tax prior to Jasper's adoption of Ordinance No. 99–12, the county may impose a one percent accommodations tax within Hardeeville's municipal limits.

FINNEY, C.J., TOAL, MOORE, and WALLER, JJ., concur.